UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TROY GERNHART, | ) |
|     Plaintiff, | ) |
| v. | ) |
| HARTFORD LIFE AND ACCIDENT INSURANCE CO., | ) |
| and | ) |
| PROFESSIONAL DISABILITY ASSOCIATES, | ) |
|     Defendants. | ) |

## **COMPLAINT**

COMES NOW Plaintiff, Troy Gernhart, and for his claims and causes of action against Defendant, Hartford Life and Accident Insurance Co., states as follows:

### PARTIES

1. Troy Gernhart ("Gernhart") is a resident and citizen of the State of Missouri.

2. Hartford Life and Accident Insurance Co. ("Hartford") is an out of state insurance company authorized to do business in the State of Missouri.

3. Professional Disability Associates ("PDA") is a foreign company authorized to transact business in the State of Missouri.

### JURISDICTION AND VENUE

4. Gernhart brings his claims, in part, pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

5. Counts II and III are governed by state law, and this court has supplemental jurisdiction over such claims.

6. This dispute involves a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

7. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

8. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

9. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

10. Plaintiff requests a jury trial on all issues and claims so triable.

## STATEMENTS OF FACT

11. From February 2016, through August 15, 2019, Magna International of America, Inc. (Magna) employed Gernhart as a Production Operator. Gernhart's job duties required him to constantly stand and walk, lift 50 pounds, operate assigned equipment, and perform repetitive motions.

12. Magna sponsored group welfare benefits plans for participating Magna employees.

13. These plans constitute employee welfare benefits plans as defined by 29 U.S.C. § 1002(1).

14. These plans offered short-term disability ("STD") and long-term disability ("LTD") benefits.

15. At all relevant times, Gernhart has been a participant and covered person under the STD and LTD benefits plans by virtue of his employment and his voluntary election of such coverages.

16. Magna is a plan sponsor and administrator.

17. Magna delegated to Hartford the function of issuing STD and LTD benefits claim

determinations.

18. Magna's group insurance policies articulate the conditions that covered plan participants must satisfy to receive STD and LTD benefits. At all times, Gernhart met those conditions.

19. In or around June, 2012, Gernhart fell off his dirt bike and sustained fractures to his left foot.

20. Gernhart underwent multiple surgeries to his left foot over the years due to infection and to correct the structural problems that were causing him pain.

21. Gernhart is a type II diabetic and receives regular doses of insulin to control his blood sugar. Diabetes is known to slow the healing of wounds and surgeries, which can lead to infections and other complications.

22. Due to the repetitive and laborious nature of Gernhart's job duties, he sustained injuries to both of his shoulders.

23. On July 11, 2019, Erich Lingenfelter, MD performed a left shoulder surgery on Gernhart to repair a "massive rotator cuff tear."

24. Gernhart was unable to continue working due to his left shoulder surgery and persistent pain, right shoulder pain, and pain and complications in his left foot. He ceased working for Magna on August 15, 2019.

25. Gernhart applied for STD benefits with Hartford. STD benefits were approved through February 13, 2020.

26. On September 4, 2019, Gernhart returned to Dr. Lingenfelter for a follow up visit. Gernhart complained of pain in his right shoulder also. Dr. Lingenfelter ordered a right shoulder MRI.

27. On October 2, 2019, Gernhart returned to Dr. Lingenfelter for follow up of his left shoulder surgery and to discuss the MRI findings of his right shoulder. The MRI revealed a partial-thickness rotator cuff tear, inflammation and bone spurs.

3

28. On October 28, 2019, Gernhart underwent left ankle joint fusion surgery performed by James Good, DPM.

29. Because of Gernhart's diabetes, his left foot surgery did not heal well. He returned to Dr. Good for incision and drainage of an abscess on November 7 and November 11, 2019.

30. On December 17, 2019, Gernhart visited Sarah Boyd, MD for follow up of his left foot surgery. Gernhart's foot was infected and not healing. Left foot amputation was discussed with Dr. Good but it was agreed to continue to treat the foot to preserve it.

31. On February 25, 2020, Hartford approved Gernhart's LTD benefits effective February 14, 2020.

32. The LTD policy defines disability as follows:

> "**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 12 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.

33. Hartford determined that Gernhart was unable to perform his occupation. The February 25, 2020 letter stated that as of February 14, 2021, the definition of disabled would change to being "prevented from performing one or more of the Essential Duties of Any Occupation."

34. On March 10, 2020, Gernhart visited Dr. Good for follow up of his left foot surgery. Gernhart was diagnosed with a non-healing surgical wound, pressure ulcer, Charcot foot due to diabetes mellitus, and pseudoarthrosis after fusion.

35. On May 21, 2020, Dr. Lingenfelter performed right shoulder surgery to repair Gernhart's torn rotator cuff.

36. On June 30, 2020, Gernhart visited Steven Smith, MD regarding his left foot pain and swelling. Below Knee Amputation (BKA) was discussed and it was agreed that it was "the

most reasonable choice to achieve quickest, most durable recovery and resumption of ambulatory status."

37. On July 17, 2020, Dr. Smith performed left BKA surgery on Gernhart.

38. Gernhart's surgical site did not heal well and he continued to have ongoing complications and ulcers.

39. On September 23, 2020, Gernhart underwent a right shoulder MRI with complaints of pain in both shoulders. The MRI revealed degenerative findings, post-surgical changes, and chronic full-thickness tearing of the supraspinatus tendon.

40. On November 6, 2020, Dr. Lingenfelter completed an Attending Physician's Statement regarding Gernhart's bilateral shoulder pain. Dr. Lingenfelter ordered permanent restrictions.

41. On January 12, 2021, Dr. Smith responded to questions from Hartford and stated that Gernhart was "having issues with ulcers" and was still adjusting to the prosthesis.

42. On January 27, 2021, Hartford informed Gernhart that LTD benefits would cease as of February 14, 2021, because he no longer met the definition of disabled:

> The definition of Disability in your contract changes as of 02/14/2021. As of this date, you must be Disabled from Any Occupation to continue to receive LTD benefits.

43. Hartford stated that a Vocational Rehabilitation Clinical Case Manager, who had never met or examined Gernhart, performed an Employability Analysis which showed "a number of occupations" for which he was qualified that were within his "physical capabilities." Hartford used this Analysis to make the following determination:

> Based on this information, we have concluded that you are not prevented from performing the essential duties of Any Occupation. Because of this, you will not meet the policy definition of Disability as of 02/14/2021, and your LTD benefits will terminate on that date.

44. On February 9, 2021, Anne Rosenthal, MD performed an Independent Medical Exam (IME) on Gernhart. The report stated that "he is unable to lift his arms. His shoulders constantly

5

ache and are in pain. He is unable to do his day-to-day activities. Everything is more difficult and takes him more time than the average person. He has difficulty with self-care. He does not sleep at all. He tosses and turns and cannot sleep."

45. Dr. Rosenthal opined that "due to the injury to both of his upper extremities, the massive rotator cuff tears for which he needs permanent restrictions, his educational level and age, he will have a difficult time finding employment. I have concerns about his overall employability."

46. On February 12, 2021, Gernhart's treating provider, Dr. Gerstner, wrote a letter and stated the following:

> Troy Gernhart DOB 12/23/1974 is a long term patient of mine at The Liberty Clinic. As you may he recall he has been out of work since August 2019. He suffers from underlying uncontrolled diabetes and had developed diabetic ulcer on his left foot. He had to take time off to get aggressive treatment for the ulcer. Unfortunately even prior to him going on medical leave he had also hurt and injured his rotator cuff. While he was off work he then had surgery on his left shoulder and continued aggressive wound care on his diabetic ulcer. Then had developed right shoulder issues. He then ultimately underwent a left below the knee amputation as his diabetic ulcer had only worsened. He still has ongoing shoulder difficulties and is unable to lift anything. He has had MRI of his right shoulder in the fall 2020 and now left shoulder MRI pending.
>
> Even with his below the knee amptutation he now has leg prosthesis but has developed underlying ulcer at the BKA site. He is not able to wear prosthesis except for emergencies.
>
> With the multitude of his medical ailments and ongoing pain and limitations he is unable to work. It is my medical recommendation he remain off work. Based upon my professional medical opinion I do not see that he will be fit to return back to work.

47. On February 15, 2021, Magna sent a letter to Gernhart terminating his employment effective February 15, 2021, because he remained on Long Term Disability.

48. On February 17, 2021, Gernhart underwent a left shoulder MRI which revealed a "large full-thickness tear involving the rotator cuff." The report also noted a probable labral tear, post-surgical changes, and degenerative findings.

49. On February 19, 2021, Gernhart appealed Hartford's January 27, 2021 decision to terminate LTD benefits.

50. On March 31, 2021, Hartford requested and purchased a Medical File Review from PDA.

6

The report was authored by Patrick Barrett, MD. Dr. Barrett has never met or examined Gernhart. Dr. Barrett opined that Gernhart was able to "do a full time light occupation."

51. On April 8, 2021, Dr. Barrett provided an Addendum to the Medical File Review. He spoke with Gernhart's long time treating provider, Dr. Gerstner. The Addendum stated that Dr. Gerstner "informed me that she believes that the claimant, Mr. Gernhart, is incapable of sustaining any type of work permanently." D. Barrett stated that he and Dr. Gerstner were "unable to reach a consensus." Again, Dr. Barrett has never met or examined Gernhart.

52. On May 5, 2021, Gernhart returned to Dr. Lingenfelter for a follow up visit. Gernhart continued to complain of pain and reduced function in both shoulders. Dr. Lingenfelter stated "it does not surprise me that he really did not heal very well."

53. On June 22, 2021, Terry Cordray, MS, CRC, ABVE, LPC completed a vocational assessment. He reviewed Gernhart's medical history, medical records and information regarding Gernhart's educational history, work history and current disability. He stated that it was not realistic to expect that Gernhart would be employed:

> On June 21, 2021, I reviewed the first 5 pages of jobs posted at jobs.mo.gov, the internet site of job postings for the State of Missouri Employment Office, within 25 miles of Mr. Gernhart's home zip code, 64024. The pages of job postings are included as an attachment to this report. I believe this is a representative sample of job postings on this date. I then reviewed the available jobs in the Excelsior Springs, Missouri, area at indeed.com, under the keyword sedentary. These job postings are also included as an attachment to this report.
>
> A review of these job postings indicates that there were no jobs available for application for which Mr. Gernhart has the requisite education, skill level, or physical capacity to perform when considering a high school special education, semi-skilled work background, and restrictions as advised by Dr. Rosenthal. There were no jobs available for which, in my opinion, an employer would realistically be expected to hire Mr. Gernhart.

54. Mr. Cordray ultimately opined that Gernhart was totally vocationally disabled:

7

> Therefore, when considering these restrictions that preclude him from other than unskilled jobs, noting that Mr. Gernhart has never used a computer or cash register, that he has a special education background, that he is of below-average intelligence, that he is unskilled, and that he was unable to be accommodated by his employer where he sustained his shoulder injuries, it is my opinion he is totally vocationally disabled.
>
> I do not believe it is realistic to expect employers, in the usual course of business, hiring individuals to perform work as it is customarily performed, to hire an individual who has only a special education high school degree, who has worked in production machine operator positions and factory welding, whose jobs required constant use of both upper extremities to reach, handle, and to lift above chest height, and who has been unable to be accommodated by his employer with alternative employment, who was placed on long-term disability benefits, who has now been awarded Social Security Disability benefits, and who has been advised these restrictions for any job.

55. On November 4, 2021, Hartford upheld its decision to terminate Gernhart's LTD benefits.

56. Gernhart is disabled. He is "prevented from performing one or more of the Essential Duties" of "Any Occupation."

57. Gernhart met and continues to meet the plan's definition of disability.

58. Gernhart's conditions are substantiated by narrative evidence and opinions by the physicians who have a long history of treating him, as well as medical records that confirm that he had long standing complaints consistent with his diagnoses.

59. Gernhart has exhausted administrative remedies.

60. Gernhart remains disabled as defined by the relevant Hartford LTD policy.

CAUSES OF ACTION
COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

61. Gernhart realleges the preceding paragraphs as if fully set forth herein.

62. Gernhart is entitled to all unpaid and accrued LTD benefits, as Hartford:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to properly consider Gernhart's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

63. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Gernhart is entitled to an award of actual damages for losses suffered.

64. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

65. Hartford has not satisfied its obligation to pay Gernhart LTD benefits.

66. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Gernhart prays for judgment against Hartford for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

67. Gernhart realleges the preceding paragraphs as if fully set forth herein.

68. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

69. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

70. As the plan's designated claims administrator and entity exercising discretion in claims administration, Hartford is a fiduciary.

71. Gernhart participated in Hartford LTD benefits plans as previously indicated.

9

72. As the payor of benefits and the entity responsible for benefits determinations, Hartford operates under an inherent structural conflict of interest.

73. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Hartford's actions as a fiduciary.

74. Hartford breached its fiduciary duty in:

    a. Engaging in a direct conflict of interest relationship with PDA which prejudiced Gernhart; and

    b. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations; and

    c. Referring Gernhart's claim to vendors who have a financial interest in reaching opinions that are favorable and support disability determinations that Hartford has already made.

75. Hartford denied Gernhart's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

76. Hartford failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Gernhart and the plan's participants and beneficiaries generally.

77. Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

78. Hartford's violations of regulations alone allow Gernhart the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

79. Hartford's violations of federal regulation also subject its decision to *de novo* review.

80. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Gernhart prays for an order that Hartford retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity; for an equitable accounting of benefits that Hartford has withheld; for the disgorgement of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

## COUNT III
## CIVIL CONSIPIRACY – PDA

81. Gernhart realleges the preceding paragraphs as if fully set forth herein.

82. PDA and Hartford have a business relationship which presents a conflict of interest, prejudicing Gernhart and other Plan Beneficiaries.

83. PDA has a financial interest in selling opinions to Hartford which support adverse benefit determinations already reached by Hartford.

84. Hartford knows that if it purchases a PDA Medical File Review, that report will be favorable to Hartford's position and adverse to the claimant.

85. Hartford retained PDA to review Gernhart's claim to accomplish the objective of wrongfully and unlawfully denying Gernhart LTD benefits.

86. PDA accepted the referral understanding this objective.

87. As pleaded above, Hartford and PDA engaged in one or more wrongful acts, and as a result, Gernhart has sustained damages in the denial of LTD benefits.

11

88. PDA is liable to Gernhart for the damages resulting from this conspiracy.

89. Wherefore, Gernhart prays for judgment against PDA for unpaid LTD benefits, attorney's fees, costs, and pre-judgment interest.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
   Derrick A. Pearce, Mo. # 42793
   Jeremy D. Haughton, Mo. #74126
   Kyle H. Sciolaro, Mo. # 64568
   103 W 26th Ave., Ste. 290
   North Kansas City, MO 64116
   P: 816.781.4836
   F: 816.792.3634
   dpearce@burnettdriskill.com
   jhaughton@burnettdriskill.com
   ksciolaro@burnettdriskill.com
   ATTORNEYS FOR PLAINTIFF